# IN THE COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

| | |
|---|---|
| CNG HOLDINGS, INC.<br>7755 Montgomery Road, Suite 400<br>Cincinnati, OH 45236<br><br>    Plaintiff,<br><br>v.<br><br>MEDLEY CAPITAL, LLC<br>375 Park Avenue, Suite 3304<br>New York, NY 10152<br><br>    Defendant<br><br>**also serve**<br><br>REGISTERED AGENTS LEGAL<br>SERVICES, LLC<br>1220 N. Market Street<br>Suite 806<br>Wilmington, DE 19801 | Case No.<br><br>Judge<br><br>**COMPLAINT** |

Plaintiff CNG Holdings, Inc. ("CNG"), for its complaint against Medley Capital, LLC states as follows:

## PARTIES

1. CNG is an Ohio corporation with its principal place of business located in Hamilton County, Ohio.

2. Medley is, upon information and belief, a Delaware corporation with a principal place of business located in New York

## JURISDICTION AND VENUE

3. Jurisdiction and venue are proper in this Court under Rule 3(B) of the Ohio Rules of Civil Procedure and applicable law because (a) all or part of the claim for relief arose in

Hamilton County, and (b) defendant conducted activity in Hamilton County that gave rise to CNG's claim for relief.

## GENERAL ALLEGATIONS

4. CNG is a holding company that owns certain companies engaged in the business of providing financial services, as well as other assets.

5. Medley is a venture capital corporation that does business in Ohio.

6. The subject of this lawsuit concerns CNG's potential acquisition of Medley's ownership interest in a certain limited liability company that is engaged in the business of consumer check cashing and short-term loans ("Company X"). The identity of Company X is not disclosed herein due to confidentiality provisions set forth in certain term sheets discussed below. Medley is aware of the identity of Company X and, at all times relevant hereto, was the majority owner thereof (either directly or though its subsidiaries or affiliates).

7. In mid-2011, CNG and Medley began discussions regarding CNG's purchase of Medley's ownership interest in Company X. These negotiations involved (a) a representative of Medley coming to Ohio on at least one occasion and meeting with representatives of CNG in order to convince CNG to proceed with negotiations and due diligence, (b) representatives of Medley sending many emails to CNG employees located in Ohio (some of which included Medley requesting that CNG employees provide information and/or take certain other actions while in Ohio for the benefit of Medley), and (c) representatives of Medley making many telephone calls to representatives of CNG located in Ohio (some of which included Medley requesting that CNG employees provide information and/or take certain other actions while in Ohio for the benefit of Medley).

ELECTRONICALLY FILED 01/25/2012 15:29 / IFI / A 1200700 / CONFIRMATION NUMBER 116870

8. As part of these negotiations, CNG and Medley executed that certain Revised Letter of Intent dated July 19, 2011 (the "Letter of Intent"). The Letter of Intent provided "high-level thoughts on the terms of a potential acquisition" but itself did "not create any legally-binding obligation on anyone." Indeed, the Letter of Intent clarified that "[a]ny transaction is subject to the negotiation and execution of a definitive agreement" following the "satisfactory completion of customary financial and legal due diligence." The Letter of Intent is not attached hereto due to confidentiality obligations, but Medley is in possession of it. CNG will provide the Court with a copy of the Letter Intent upon entry of a satisfactory protective order.

9. During their negotiations, but prior to execution of the term sheets identified more particularly below, Medley represented to CNG that relevant financial statements were prepared in accordance with United States' generally accepted accounting principles ("GAAP"). Medley also made other representations regarding the financial health of Company X (such as EBITDA, revenue, etc) and other matters that affected operations (such as representations related to licensing or lien issues). Each of these representations was material to CNG continuing negotiations.

10. CNG and Medley executed that certain Confidential Term Sheet dated October 11, 2011 (the "Term Sheet"), which set forth a summary of terms regarding the potential acquisition of Company X. CNG and Medley subsequently executed that certain Revised Confidential Term Sheet dated November 18, 2011 (the "Revised Term Sheet"), which replaced the terms of the Term Sheet. Collectively, the Term Sheet and Revised Term Sheet are referred to as the "Term Sheets." The Term Sheets are not attached hereto as a result of confidentiality obligations set forth therein. Medley is, however, in possession of the Term Sheets. CNG will provide the Court with copies upon entry of a satisfactory protective order.

11. Pursuant to the Revised Term Sheet, CNG would acquire all of Medley's membership interest in Company X in exchange for a specified sum. The Revised Term Sheet contained both binding and non-binding terms.

12. One of the binding terms of the Revised Term Sheet concerned a deposit that Medley requested. Pursuant to the terms of the Revised Term Sheet, CNG tendered to Medley a deposit in the amount of $500,000 (the "Deposit"). The Revised Term Sheet specified that the Deposit was to be "refunded if there is an issue that is discovered by [CNG] during its due diligence that is materially and adversely different than what has been represented to [CNG] in discussions and due diligence through the date hereof."

13. CNG conducted on-site due diligence on Company X after execution of the Revised Term Sheet. As a part of its due diligence, CNG discovered that, among other things, Medley had overstated the EBITDA of Company X and that Company X had not used GAAP accounting to report EBITDA in all financial statements previously provided to CNG. These and other inaccuracies discovered by CNG negatively impacted the value of Company X by over $4 million (which was a substantial percentage of the purchase price). Each of these issues were discovered during the due diligence process after execution of the Revised Term Sheet, and each was materially and adversely different than what had been represented to CNG in discussions with Medley through the date of the Revised Term Sheet.

14. As a result of what was discovered during the due diligence process, by letter dated December 14, 2011, CNG properly terminated its negotiations with Medley regarding Company X in accordance with the Revised Term Sheet. In that same letter, CNG requested that Medley return the Deposit.

4

15. Medley responded by letter dated December 23, 2011, wherein it refused to return the Deposit. A copy of this letter is not attached due to confidentiality obligations, but Medley is in possession of it. CNG will provide the Court with a copy upon entry of a satisfactory protective order.

## COUNT I
## Breach of Contract

16. CNG incorporates by reference as if fully rewritten herein, the allegations contained in paragraphs 1-15, above.

17. The Revised Term Sheet contains certain legally-enforceable obligations on the part of Medley, including the obligation to return the Deposit as a result of the issues discovered by CNG during the due diligence process. All conditions precedent to Medley's performance of the Revised Term Sheet have occurred or been satisfied.

18. Pursuant to the Revised Term Sheet, Medley is obligated to return the Deposit. Medley has improperly refused to return the Deposit in contravention of its contractual obligations. CNG has been harmed as a result of Medley's breach and refusal to return the Deposit.

## COUNT II
## Unjust Enrichment

19. CNG incorporates by reference as if fully rewritten herein, the allegations contained in paragraphs 1-18, above.

20. In the alternative to its claim for breach of contract, CNG avers that Medley has been unjustly enriched as a result of CNG tendering the Deposit.

21. CNG conferred a benefit on Medley through payment of the Deposit, and Medley was aware of the benefit conferred.

ELECTRONICALLY FILED 01/25/2012 15:29 / IFI / A 1200700 / CONFIRMATION NUMBER 116870

22. Under the circumstances described herein, it is not just for Medley to retain the benefit received from CNG.

23. CNG has been harmed by Medley's unlawful retention of the Deposit.

## COUNT III
### Conversion

24. CNG incorporates by reference as if fully rewritten herein, the allegations contained in paragraphs 1-23, above.

25. The Deposit rightfully belongs to CNG. Medley has wrongfully exercised dominion and control over the Deposit, and has converted it to its own use.

26. The Deposit was held by Medley in a separate, interest-bearing account.

27. CNG has been damaged by Medley's conversion of the Deposit.

WHEREFORE, Plaintiff demands that

(1) That the Court enter judgment against Medley and in favor of CNG in an amount equal to $500,000.00, plus all interest earned by Medley, plus pre-judgment and post-judgment interest, plus consequential damages;

(2) the Court award all other relief that is equitable and just, including attorneys' fees and costs.

ELECTRONICALLY FILED 01/25/2012 15:29 / IFI / A 1200700 / CONFIRMATION NUMBER 116870

Respectfully submitted,

s/Pierre H. Bergeron
Pierre H. Bergeron (0071402)
Robert A. Amicone, II (0079231)
Carlee M. Toth (0086989)
SQUIRE SANDERS (US) LLP
221 East Fourth Street, Suite 2900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
pierre.bergeron@squiresanders.com
robert.amicone@squiresanders.com
carlee.toth@squiresanders.com

*Attorneys for CNG Holdings, Inc.*